MATTER OF C——

In SECTION 245 Proceedings

A-10799770

*Decided by Regional Commissioner June 16, 1960*
*Approved by Assistant Commissioner June 21, 1960*

**Adjustment of status—Section 245 of 1952 act—Denied as matter of discretion to alien twice refused immigrant visa by one consul who then obtained nonimmigrant visa from another consul.**

Section 245 adjustment of status denied in the exercise of discretion to an applicant who after having twice been found ineligible by an American Consul in Germany for an immigrant visa travelled to Mexico where she obtained a nonimmigrant visa by purporting to visit a friend in the United States at a fictitious address and who immediately after entry was married to a United States citizen.

## BEFORE THE REGIONAL COMMISSIONER

**Discussion:** The applicant, a native and citizen of Germany, born at Halle, Germany, on October 28, 1923, was admitted to the United States as a nonimmigrant visitor on May 2, 1958, at San Ysidro, California. On May 5, 1958, at Emporia, Virginia, she married W——L——C——, a citizen of the United States, and on October 21, 1958, she filed this application for status as a permanent resident. On January 28, 1960, the District Director at Baltimore denied the application on the ground that the applicant was not a *bona fide* non-immigrant at the time of her admission to the United States and the case has come forward on appeal.

Prior to her entry into the United States on May 2, 1958, the applicant had twice applied to the American Consulate General at Frankfurt, Germany, for an immigrant visa to enter the United States for permanent residence. On September 8, 1956, she was refused an immigrant visa on the ground that she was inadmissible to the United States under the provisions of section 212(a)(28) of the Immigration and Nationality Act. Subsequently, she made another application and on October 31, 1957, she was again refused an immigrant visa on the ground that she was inadmissible to the United States under the provisions of sections 212(a)(19), 212(a)(27), and 212(a)(28) of the 1952 act. Both refusals were based

primarily on classified information, the disclosure of which would be prejudicial to the best interests of the United States. On November 17, 1957, after the second refusal, the applicant wrote the American Consulate General at Frankfurt and requested an explanation as to the grounds on which the immigrant visa was refused. She was invited to the consulate and the applicable provisions of the law were explained to her. It is clear from the record, therefore, that the applicant was well aware that she had been found to be ineligible to receive a visa by the proper authority.

The applicant has testified that she met the man she married on July 1, 1956, while he was stationed in Germany. She has further testified that she fell in love with him, but they could make no plans to marry prior to his return to the United States in October 1957, since he had a wife and two children. He was divorced from his first wife on February 22, 1958. The applicant has testified that they corresponded and talked by telephone and decided to meet someplace to determine what could be done. The applicant then flew from Germany to Tijuana, Mexico, on April 20, 1958, transiting the United States under the transit-without-visa provisions of the law. The applicant has stated that she went to Tijuana, Mexico, for the purpose of visiting a friend who is married to a doctor in that city. However, it has been determined that at that time her friend was visiting relatives in Germany. In Tijuana she met her intended husband and on April 30, 1958, she applied for and was issued a nonimmigrant visitor's visa at the American Consulate in Tijuana, Mexico, for the purpose of visiting a friend, L——F——, 3970 North Sheridan Road, Chicago, Illinois. It was with this visa that she subsequently gained admission to the United States on May 2, 1958. At the time of her admission she stated that she was destined to the friend in Chicago. It has now been determined that the Chicago address she gave was fictitious.

Instead of proceeding to Chicago, the applicant went directly to Washington, D.C., in company with the man she married and within three days after her admission to the United States she married in Emporia, Virginia.

The committee reports from both houses of the Congress which accompanied the Immigration and Nationality Act at the time of enactment contain ample evidence of the concern with which Congress viewed just this type of case. In commenting on adjustment of status in the United States, both reports containing the following statement:

* * * The committee is aware, too, of the progressively increasing number of cases in which aliens are deliberately flouting our immigration laws by the processes of gaining admission into the United States illegally *or ostensibly as nonimmigrants* but with the intention of establishing themselves in a situation in which they may subsequently have access to some administrative remedy

684

to adjust their status to that of permanent residents. * * * This practice is threatening our entire immigration system and the incentive for the practice must be removed. [Senate Report No. 1137, 82nd Congress, 2d Session, p. 25; House Report No. 1365, 82nd Congress, 2d Session, pp. 62–63; emphasis supplied.]

Furthermore, the committee report which accompanied the Act of August 21, 1958, amending section 245, stated in part:

The language of the instant bill has been carefully drawn so as not to grant undeserved benefits to the unworthy or undesirable immigrant. This legislation will not benefit the alien who has entered the United States in violation of law. * * * (House Report No. 2258, 85th Congress, 2d Session, p. 3.)

Here we have the case of an alien who applied to an American consular officer for an immigrant visa, not one time but twice. Both times the consular officer determined that she was ineligible to receive a visa and she was so informed. After the second refusal she requested further information as to the ground of inadmissibility and she was invited to the consulate where the officer explained the provisions of law under which she was found ineligible to receive a visa. Despite the fact that she was well aware that she was ineligible to receive a visa, she then proceeded to another American consulate in another continent, several thousand miles from her home where she applied for and was successful in obtaining a nonimmigrant visa. With that nonimmigrant visa she gained admission to the United States on her claim that she was going to visit a friend and gave as her destination a fictitious address. Immediately after that entry she married a citizen of the United States and subsequently submitted this application.

Under these circumstances, we have concluded that no determination need be made in this case as to whether the applicant meets the statutory requirements of section 245, since, even if she meets those requirements, this is clearly not the type of case which warrants favorable exercise of the Attorney General's discretion. Therefore, the district director's order will be withdrawn and an order will be entered denying the application as a matter of discretion.

**Order:** It is ordered that the district director's order of January 28, 1960, be withdrawn and that the application be denied as a matter of discretion.